# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| SILVER STATE INTELLECTUAL TECHNOLOGIES, INC., a Nevada corporation, | ) ) ) ) | Case No.: 2:12-cv-01308-GMN-PAL |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| FOURSQUARE LABS, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

Pending before the Court are the proposed claim constructions submitted by Plaintiff Silver State Intellectual Technologies, Inc. ("Plaintiff") and Defendant FourSquare Labs, Inc. ("Defendant"). Plaintiff filed its Opening Brief on August 23, 2013. (ECF No. 52.) Defendant filed its Responsive Claim Construction Brief on September 6, 2013. (ECF No. 55.) Subsequently, on September 13, 2013, Plaintiff filed its Reply Claim Construction Brief. (ECF No. 59.)

This is an Order construing the disputed terms of the claims in United States Patent No. 7,343,165 ("the '165 Patent") that relate to Claim 1 of the '165 Patent.[1] As it relates to Claim 1, the parties have submitted six (6) terms and phrases for construction. (*See* Joint Statement, Ex. A at 1-5, ECF No. 51-1.) In addition, as it relates to Claim 1, the parties have failed to reach agreement on the interpretation of any claim terms. (*See* Joint Statement 2:6-14, ECF No. 51.)

---

[1] The parties have also briefed their proposed constructions for the disputed terms that appear in asserted claims two through nine. However, the parties previously represented that Plaintiff is asserting these claims only as part of Plaintiff's indirect infringement causes of action. Furthermore, Plaintiff's indirect infringement causes of action were recently the subject of a Motion to Dismiss that the Court granted and gave Plaintiff leave to amend. Based on Defendant's representation that a new Motion to Dismiss Plaintiff's Amended Complaint is forthcoming, the Court declines to construe the claim terms that relate to asserted claims two through nine until the resolution of that Motion to Dismiss.

After consideration of the briefs and material submitted by the parties, the arguments of counsel at the claim construction hearing on October 11, 2013, and the record before the Court, the Court issues this Order construing the disputed claim terms.

## I.   BACKGROUND

Plaintiff Silver State Intellectual Technologies, Inc. is a Nevada corporation and the sole owner, by assignment, of the '165 Patent entitled "GPS Publication Application Server." (Third Am. Compl. ¶¶ 4-5, ECF No. 61.)  The invention of the '165 Patent relates to a method of providing location-based information to a user of a "mobile location knowledgeable device." U.S. Patent No. 7,343,165, at [57] (filed Apr. 11, 2001).

In this action, Plaintiff alleges that Defendant FourSquare Labs is infringing the '165 Patent. (Third Am. Compl. ¶ 7.)  Plaintiff further alleges that Defendant is a Delaware corporation that "makes, uses, and provides in the United States the 'foursquare' brand location-based social networking system that [Plaintiff] alleges infringes the '165 patent . . .." (*Id.*)

In response to the Defendant's allegedly infringing activities, Plaintiff filed the instant action on July 25, 2012, alleging infringement of the '165 Patent and an additional patent, United States Patent No. 7,475,057. (*See* Compl. ¶ 5, ECF No. 1.)  Plaintiff later filed an amended complaint in which it asserts infringement only of the '165 Patent. (*See* Second Am. Compl. ¶ 5, ECF No. 21.)  In addition to direct infringement of the '165 Patent, Plaintiff also alleges that Defendant is liable for Induced Infringement and Contributory Infringement of the '165 Patent. (Third Am. Compl. ¶¶ 16-29, ECF No. 61.)

## II.   LEGAL STANDARD

The resolution of patent infringement actions generally requires two distinct steps.  First, the Court engages in a claim construction analysis to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,

976 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996).  Only after the claims are properly construed does the action proceed to the second step, in which the fact finder compares those properly construed claims to the accused device to determine, as a matter of fact, whether all of the claim limitations are present in the accused device. *Id.*  At the current stage of this patent infringement action, the Court focuses only on the first step.

### A.    Claim Construction

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted).  The interpretation of the scope and meaning of disputed terms in patent claims is a question of law and exclusively within the province of a court to decide. *Markman*, 517 U.S. at 372.  When construing disputed claim terms, the Court must give each disputed term "the meaning that the term would have to a person of ordinary skill in the art at the time of the invention," unless the patentee clearly intended a different definition.[2] *Phillips*, 415 F.3d at 1312-13.  Furthermore, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears but in the context of the entire patent, including the specification." *Id.* at 1313.

In certain cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly

---

[2] In the claim construction briefing, neither party provided the Court with a proposed definition of a person skilled in the art relevant to the '165 Patent. (*See generally* Claim Construction Br., ECF No. 52; Resp. Clam Construction Br., ECF No. 55.) In addition, at the October 11 *Markman* hearing, Plaintiff represented that the Court need not make such a determination because it would not aid the Court in its claim construction analysis. (See Oct. 11, 2013 Hr'g Tr. 2:14–4:14, ECF No. 69.) Similarly, Defendant indicated that the parties may agree as to the relevant skill in the art, but failed to articulate exactly how that level of skill is defined. (*Id.* at 4:18–6:19.)

understood words." *Id.* at 1314.  In other instances, the claim term may have a particular meaning in the field of art that is not immediately clear. *Id.*  In such cases, the Federal Circuit has instructed that a court's analysis should focus on the intrinsic evidence, including "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* at 1314.  "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.*  "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id.*  Specifically, differences between the claims often provide useful guidance in understanding the meaning of the claim terms. *Id.*  "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314–15.

The claims, however, are not read in isolation, but are read in light of the entire specification, of which the claims are a part. *Id.*  In fact, the specification is "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Courts can also look to the prosecution history as part of "intrinsic evidence" to determine how the Patent Office and the inventor understood the patent. *Phillips*, 415 F.3d at 1317.  However, the prosecution history lacks the clarity of the specification and more often is less useful for claim construction purposes. *Id.*

Finally, extrinsic evidence may also be relevant to claim construction. *Id.*  Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980.  Although such evidence may aid the Court in construing claim terms, "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319.  Thus, "while extrinsic evidence can shed useful light on

the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (internal quotation marks omitted).

## III.   <u>CONSTRUCTION OF THE DISPUTED CLAIM TERMS</u>

The parties dispute the construction of six (6) terms or phrases:  (1) user-specific space in memory; (2) accessible over a computer network to a specific user; (3) associating a mobile communication device with the user; (4) additional data regarding the user, the additional data being related to the geographic location of the user; (5) receiving from the user an access list of possible requestors; and (6) providing the data indicative of the location of the user.

Terms one through six are present in independent Claim 1.  The disputed claim terms are bolded and underlined below.  Claim 1:

> A method of providing contact information regarding a user, the method comprising:
>> allocating a **<u>user-specific space in memory</u> <u>accessible over a computer network to a specific user</u>**;
>> **<u>associating a mobile communication device with the user</u>**;
>> determining a geographic location of the user by receiving location information provided by a mobile communication device;
>> storing data indicative of the location of the user in the <u>user-specific space</u>;
>> receiving, from the user**, <u>additional data regarding the user, the additional data being related to the geographic location of the user</u>**;
>> storing the additional data regarding the user in the <u>user-specific space</u>;
>> **<u>receiving from the user an access list of possible requesters</u>** of the data and the additional data;
>> storing the access list of possible requesters of the data and the additional data in the <u>user-specific space</u>; and
>> **<u>providing the data indicative of the location of the user</u>** and the additional data regarding the user to possible requesters on the access list.

As discussed below, Plaintiff asserts that each of these six claim terms requires no further construction and that the Court should give the terms their plain and ordinary meaning.  In contrast, Defendant has provided proposed constructions and also asserts

that two of these claim terms are indefinite and lack adequate written description.

### A.   "user-specific space in memory"

### Proposed Constructions[3]

| Plaintiff | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
|---|---|
| Defendant | "a user-specific database populated by the user and containing user information, including the user's location" |

### 1.   The Parties' Proposed Constructions

Defendant proposes that the Court construe "user-specific space in memory" as "a user-specific database populated by the user and containing user information, including the user's location."[4]   However, Defendant's proposed construction is incorrect for several reasons.

First, the requirement that this "space in memory" "contain[s] user information, including the user's location" is already required by later steps of this method claim.   Namely, the method claim specifically states that data indicative of the location of the user is stored in the user-specific space.  '165 Patent col.7, ll.29-30 (reciting the step of "storing data indicative of the location of the user in the user-specific space").   Therefore, this latter portion of Defendant's proposed construction is redundant and unnecessary as part of the construction of this disputed term.

Defendant also contends that the words of the '165 Patent also require that the "user-specific space" must be "populated by the user."   Plaintiff objects to this construction because it improperly imports limitations into the claim from the specification.   The Court agrees.   True enough, the specification of the '165 Patent does provide for a "user-specific storage space

_____

[3] Throughout this Order, Plaintiff's proposed constructions are taken from its Opening Claim Construction Brief. (*See* ECF No. 52.)  Similarly, throughout this Order, Defendant's proposed constructions are taken from its Responsive Claim Construction Brief. (*See* ECF No. 55.)

[4] The Court first notes that the phrase "user-specific" appears in both the disputed term and in Defendant's proposed construction.   Accordingly, it appears to the Court that the source of the parties' dispute actually centers on the proper construction of "space in memory."

[that] allows the user to populate their own database . . ..” ’165 Patent col.2, ll.16-17. However, this portion of the specification details one possible embodiment.  In fact, the specification also provides that the information can be sent to a server, rather than populated by the user. ’165 Patent col.2, ll.13-16 (“[C]ertain preferences are sent from a wireless device to a GPS server and then forwarded on to a separate application server for storing in the users [sic] personal home page location.”).  For this reason, the Court agrees with Plaintiff that adopting this portion of Defendant’s proposed construction would conflict with the Federal Circuit’s prohibition on importing limitations from the specification into the claims. *See Phillips*, 415 F.3d at 1323 (“[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments”).

Finally, Defendant asserts that this “space in memory” must be a “database.”  Plaintiff objects to this construction because adopting this portion of the construction would also amount to impermissibly limiting the scope of Claim 1 by importing limitations from the specification. Plaintiff concedes that a database is one way in which data can be represented in memory. However, Plaintiff also argues that the words of the ’165 Patent give no indication that the patentee intended to confine the manner in which data could be represented to a “database.”  In fact, nothing in the specification precludes the necessary data from being stored in a comma-separated values file, and such a file would fall outside the definition of a database as one of skill in the art would understand it.  (*See* Oct. 11, 2013 Hr’g Tr. 35:12–18, 50:22–51:5, ECF No. 69.)

Defendant cites numerous passages in the specification of the ’165 Patent where the patentee explained that in certain embodiments of the invention, user information could be stored in a database. *See, e.g.*, ’165 Patent col.2, ll.13-20 (“In this new system and method certain preferences are sent from a wireless device to a GPS server and then forwarded on to a separate application server for storing in the users [sic] personal home page location, *or* user-

specific storage space allows the user to populate their own database . . ..”), col.3, ll.20-36 ("[I]n one embodiment . . . [t]he server includes a database. The database includes information pertaining to a variety of topics. . . ."). Despite these repeated references to storing this information in a database, the patent also describes an embodiment in which "the user-specific storage space includes information found on an electronic card (e-card)." '165 Patent col.4, ll.18-19. The specification further explains that "[e]-cards provide electronic card file [sic] of the user's personal information . . .." '165 Patent col.5, ll.28-34. Given these sections of the specification that describe alternative manners of storing user-specific information, the Court concludes that the words of the patent cannot support a construction that would limit a "user-specific space in memory" to a database.

### 2.    The Court's Construction

After looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "user-specific space in memory," as used in the '165 Patent, to have its plain and ordinary meaning. The words of the claims and the remaining parts of the specification do not support the construction asserted by Defendant. Rather, a "user-specific space in memory" is simply a "space in memory" that is tied to a specific user. For these reasons, the Court finds that the term "user-specific space in meaning" requires no further construction.

### B.    "accessible over a computer network to a specific user"

### Proposed Constructions

| Plaintiff | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
|-----------|------------------------------------------------------------------------------------------------------------------------|
| Defendant | "a user can review, edit, obtain, add and delete any and all information in the user-specific database" |

### 1.    The Parties' Proposed Constructions

Defendant proposes that the Court construe the term "accessible over a computer

network to a specific user" as "a user can review, edit, obtain, add and delete any and all information in the user-specific database."  As discussed below, Defendant's construction is improper because it improperly narrows the claim scope to the preferred embodiments in the specification and is redundant of the remainder of the claim language.  In fact, Plaintiff recognizes that each of the actions included in Defendant's proposed construction constitutes a possible action that is included in the term "accessible."  However, Plaintiff disputes that each of these actions are all *required* by the language of Claim 1.  Furthermore, Defendant has failed to provide any citations to the specification that would necessitate that the claim language require the ability to perform each of these functions.  In reality, the language cited by Defendant is either permissive language or is part of the description of an exemplary embodiment:

- "At any time the user ***could*** contact the home page for review of stored information and to modify the status of users who subscribe to the user's home page." '165 Patent col.2, ll.37-39 (Summary of the Invention) (emphasis added).

- "The user ***may*** request a complete review of their dynamic data upon contacting their own home page." '165 Patent col.2, ll.45-47 (Summary of the Invention) (emphasis added).

- "Thereafter the user contacts the application server to obtain information stored in the user-specific storage area." '165 Patent col.4, ll.12-14 (referring to an exemplary embodiment of the application).

- "The user of the PCD ***may*** also contact the application server, or other computer maintaining the PCD user-specific space, to review and modify data in the user-specific space." '165 Patent col.4, ll.49-54 (emphasis added).

Additionally, the remaining language of Claim 1 also requires that the Court reject Defendant's narrow construction.  Specifically, Claim 1 later provides that the user-specific

space in memory must be accessible in order to "stor[e] the additional data regarding the user in the user-specific space" and to "stor[e] the access list of possible requesters of the data and the additional data in the user-specific space."'165 Patent col.7, ll.21-42 (Claim 1).  Therefore, not only is Defendant's proposed construction incorrect, but the words of Claim 1 adequately explain what it means for the user-specific space in memory to be "accessible" to a specific user.  Accordingly, the Court concludes that no further construction of this term is necessary.

### 2.    The Court's Construction

After looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand "accessible over a computer network to a specific user," as used in the '165 Patent, to have its plain and ordinary meaning.  The language of the claims and the remaining parts of the specification do not support the construction requested by Defendant.  Accordingly, the Court finds that this term requires no further construction.

### C.    "associating a mobile communication device with the user"

#### Proposed Constructions

| | |
|---|---|
| **Plaintiff** | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
| **Defendant** | Invalid due to indefiniteness & lack of written description |

Defendant contends that this claim term renders Claim 1 invalid because it is indefinite and because it lacks the requisite written description.

### 1.    Indefiniteness

"[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).  This requirement is codified in the Patent Act, which requires that the claim(s) of a patent must

"particularly point[] out and distinctly claim[] the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b).  Courts analyze whether a claim is sufficiently "particular" and "distinct" from the view point of a person of ordinary skill in the art.  However, "[o]nly claims not amenable to construction or insolubly ambiguous are indefinite." *Datamize*, 417 F.3d at 1347 (internal quotation marks omitted).  Furthermore, finding a patent claim invalid as indefinite requires clear and convincing evidence. *Id.* at 1348.

In this case, Defendant argues that this phrase is indefinite because "[t]here is no accepted definition for associating a mobile device with a user" and because Defendant is unable to ascertain the meaning or scope of this claim.  (Resp. 14:13-19, ECF No. 55.)  However, such conclusory statements are insufficient to carry Defendant's burden of proving indefiniteness by clear and convincing evidence. *See, e.g.*, *Datamize*, 417 F.3d at 1350-51 (holding that the claim term "aesthetically pleasing" was indefinite because it was entirely based on the user's subjective opinion and, as such, "would not notify the public of the patentee's right to exclude").  Furthermore, based on the claim language and the written description, it seems that the patentee was using the term "associating" in a way to indicate that this method claim requires a step wherein the mobile communication device is somehow linked with or tied to the specific user.  Accordingly, the Court disagrees with Defendant that this claim term is indefinite.

## 2.    Inadequate Written Description

Defendant also argues that Claim 1 is invalid because the written description fails to adequately support this portion of the claim language.  The Patent Act requires that "[t]he specification shall contain a written description of the invention . . .." 35 U.S.C. § 112(a).  Determining whether this requirement is satisfied is a question of fact that requires an analysis of the words in the specification to determine whether they adequately describe "an invention understandable to [a] skilled artisan and show that the inventor actually invented the invention

claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).

In support of its assertion that this claim is invalid for inadequate written description, Defendant provides only conclusory statements that "[t]here is literally nothing in the '165 patent that discloses how one would 'associate' a mobile communication device with a user." (Resp. 15:4-8, ECF No. 55.)  However, whether a claim is supported by adequate written description is a question of fact.[5]  Furthermore, Defendant must eventually establish invalidity due to inadequate written description by clear and convincing evidence.  At this point, Defendant has not convinced the Court that no reasonable juror could reach a conclusion contrary to the one advocated by Defendant.  Therefore, the Court will not adopt Defendant's position that this claim term renders Claim 1 invalid.  Rather, the Court concludes that this term needs no further construction and should be given its plain and ordinary meaning.

### 3.     The Court's Construction

For the reasons stated above, after looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "associating a mobile communication device with the user," as used in the '165 Patent, to have its plain and ordinary meaning.  At this stage, Defendant has failed to carry its burden of establishing that this claim is invalid as indefinite or for inadequate written description.  Accordingly, the Court finds that this term requires no further construction.

/ / /

/ / /

---

[5] This is not to say that Defendant is incapable of successfully asserting this invalidity argument at the summary judgment stage. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) ("Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party.").  Here, the Court concludes only that the paltry analysis and legal citation in Defendant's Responsive Claim Construction brief is insufficient to establish that no reasonable juror could conclude that this claim is valid, especially in light of the heavy clear and convincing evidence standard that Defendant must bear.

**D.** **"additional data regarding the user, the additional data being related to the geographic location of the user"**

**Proposed Constructions**

| | |
|---|---|
| **Plaintiff** | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
| **Defendant** | "contact information preferences for the user relating to a specific geographic location of the user" |

### 1.    The Parties' Proposed Constructions

Defendant requests that the Court construe this term as "contact information preferences for the user relating to a specific geographic location of the user."  The Court agrees with Plaintiff that Defendant's proposed construction is improper for several reasons.

First, as with previous disputed terms, Defendant's proposed construction improperly limits the claim scope to an exemplary embodiment.  Namely, Defendant's proposal would improperly limit the claimed "additional data regarding the user" solely to "contact information." *See* '165 Patent col.4, ll.55–col.5, ll.3.

Second, in contrast to the previously discussed claim terms, the language in the written description actually conflicts with Defendant's proposed construction.  Specifically, the written description discloses an embodiment wherein a database "contains personalized information regarding points of interest and other matters provided by users of the PCDs." '165 Patent col.3, ll.31-33.  For this reason, the Court cannot limit the construction of this term to "contact information," when the language of the specification of the '165 Patent clearly contemplates a broader definition. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1326 (Fed. Cir. 2012) (recognizing that a construction that excludes embodiments is "rarely, if ever, correct").

Finally, limiting this phrase to contact information would violate the doctrine of claim differentiation.  In *Phillips*, the Federal Circuit also instructed that "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms." 415 F.3d at 1314 (citation omitted).  "The doctrine of claim differentiation stems from the common sense

notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (internal quotation marks omitted).  Although courts frequently apply this doctrine when a party attempts to construe a claim term that appears in an independent claim in a way that includes a limitation that is claimed in a *dependent* claim, the doctrine also applies to differentiate the language used in two *independent* claims within a single patent. *See Phillips*, 415 F.3d at 1324-25 (discussing the limitations present in independent claim 17 that were absent from independent claim 1 and that, as such, these additional limitations must be excluded from the construction of a term used in both claims); *see also Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254-55 (Fed. Cir. 2011) (rejecting a party's attempt to import a limitation into a term used in both independent claims when the requested limitation was specifically claimed in only one of the independent claims); *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous . . ..").

Here, the disputed claim term from Claim 1 recites the step of "receiving, from the user, additional data regarding the user, the additional data being related to the geographic location of the user." '165 Patent col.7, ll.31-33.  In contrast, independent Claim 11 recites a similar step that limits the received data to contact information. '165 Patent col.8, ll.37-39 ("receiving a plurality of user contact information from the user, each user contact information associated with a location of the user").  Thus, limiting this "additional data" to contact information would violate the doctrine of claim differentiation because it would render the limitations of Claim 11 superfluous.

In an effort to overcome the defects in its proposed construction, Defendant relies on the preamble of Claim 1, which expressly recites a "method of *providing contact information*

regarding a user." '165 Patent col.7, ll.21-22 (emphasis added). Based on this preamble language, Defendant argues that without construing "additional data" to mean "contact information," this claim would no longer relate to a method of providing contact information. Defendant's argument is tantamount to an assertion that the preamble of Claim 1 states a claim limitation. However, language in a claim's preamble limits the scope of the claim only when it is "necessary to give life, meaning, and vitality to the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (internal quotation marks omitted). In contrast, when the preamble language serves as merely a "statement of purpose," it will not limit the scope of the claim. *See Marrin v. Griffin*, 599 F.3d 1290, 1294-95 (Fed. Cir. 2010); *see also Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed Cir. 2002) ("[A] preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." (internal quotation marks omitted)).

Here, contrary to Defendant's argument, the preamble language of Claim 1 of the '165 Patent is simply a statement of purpose and is not necessary to "give life, meaning, and vitality to the claim." Accordingly, Defendant's argument fails to persuade the Court to adopt Defendant's proposed construction.

Likewise, Defendant's prosecution history argument also fails. Defendant asserts that the patentee disclaimed the claim scope beyond "contact information" when it elected to prosecute the claims related to "location and contact information." However, this argument fails to persuade the Court that this election amounted to a "clear and unambiguous disavowal of claim scope" as required to narrow the ordinary meaning of this phrase. *Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1372-73 (Fed. Cir. 2012). This argument is even less persuasive in light of the Federal Circuit's warning that "because the prosecution history represents an ongoing negotiation between the PTO and the inventor, it

often lacks the clarity of the specification and thus is less useful for claim construction purposes." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013) (internal quotation marks omitted).

### 2. The Court's Construction

For the reasons stated above, after looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "additional data regarding the user, the additional data being related to the geographic location of the user" as used in the '165 Patent, to have its plain and ordinary meaning. The language of the claims and the remaining parts of the specification do not support the construction requested by Defendant. Accordingly, the Court finds that this term requires no further construction.

### E. "receiving from the user an access list of possible requesters"

#### Proposed Constructions

| | |
|---|---|
| **Plaintiff** | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
| **Defendant** | Invalid due to indefiniteness & lack of written description<br><br>Alternatively, "a list of people who are provided the information from the user specific space" |

### 1. The Parties' Proposed Constructions

Defendant argues that this claim phrase renders Claim 1 invalid due to indefiniteness and lack of written description. Alternatively, Defendant requests that the Court construe this term as "a list of people who are provided the information from the user specific space." Plaintiff, on the other hand, contends that this term requires no construction and the phrase should be given its plain and ordinary meaning.

The Court first concludes that Defendant has failed to carry its burden of establishing, by clear and convincing evidence, that Claim 1 is invalid due to indefiniteness and lack of written

description.  As to indefiniteness, Defendant provides only the conclusory statements that "this language is indefinite" and that this language consists of an "insolubly ambiguous phrase." (Resp. 20:5-8, 25-26, ECF No. 55.)  As discussed in Section III.C above, such conclusory statements, without more, cannot carry Defendant's heavy burden of establishing indefiniteness by clear and convincing evidence.

Second, as to lack of written description, Defendant has failed to persuade the Court that the Court should, at this stage of the litigation, resolve this question of fact in the Defendant's favor.  Plaintiff provided several citations to the written description that potentially provide the requisite description such that a reasonable juror might find that these passages adequately describe the invention such that a skilled artisan would understand that the inventor actually invented the claimed invention. *See* '165 Patent col.2, ll.37-39 (contemplating an invention wherein users can subscribe to a home page); '165 Patent col.4, ll.52-54 (recognizing that users of the claimed invention may "provide varying levels of access to data . . . to both persons known and unknown to the user").  Given these passages from the written description, the Court is not persuaded that no reasonable juror could find that this claim is adequately supported by the written description.  Thus, at this stage of the litigation, Defendant has failed to carry its burden of establishing that Claim 1 is invalid for either of the asserted reasons.

Defendant alternatively argues that this phrase should be construed as "a list of people who are provided the information from the user specific space."  To support this construction, Defendant relies on the prosecution history and, specifically, the patentee's response to the examiner's rejection of the claims as anticipated by United States Patent No. 6,377,810 (the "Geiger Reference" or "Geiger").  Specifically, when faced with this rejection, the patentee differentiated its invention from Geiger by noting that Geiger requires a requester to "directly request permission form [sic] the mobile device every time it desires positioning of the mobile device." (Reply to July 5, 2006 Office Action 9-10, Seymour Decl. Ex. L, ECF No. 56-12.)

Through this statement, the patentee disclaimed a method wherein access to the information must be requested each time access is desired.  As such, a proper construction of this phrase must exclude this "negotiated access."

For these reasons, the Court will adopt Defendant's proposed construction subject to the following modifications.  First, the intrinsic record does not appear to support limiting the identity of the individuals on the access list to "people."  Because the Court finds no reason to limit this list to *human* requesters, the Court will replace "people" with "requesters."  Second, Defendant's construction would improperly require that the information be provided to the requester.  Including this limitation in the construction would be improper because "providing" the information is required by a subsequent step of Claim 1. *See* '165 Patent col.7, ll.40-42 ("providing the data indicative of the location of the user and the additional data regarding the user to possible requesters on the access list").  Rather, the claimed access list is actually "a list of possible requesters authorized to receive the information."

### 2.    The Court's Construction

For the reasons stated above, after looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "receiving from the user an access list of possible requesters," as used in the '165 Patent to mean "a list of possible requesters authorized to receive the information."  At this stage, Defendant has failed to carry its burden of establishing that this claim is invalid as indefinite or for inadequate written description.  Therefore, the Court construes the term "receiving from the user an access list of possible requesters" as "a list of possible requesters authorized to receive the information."

/ / /

/ / /

/ / /

**F.     "providing the data indicative of the location of the user"**

**Proposed Constructions**

| | |
|---|---|
| **Plaintiff** | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
| **Defendants** | "sending the data indicative of the location of the user" |

**1.     The Parties' Proposed Constructions**

Defendant requests that the Court construe this phrase as "sending the data indicative of the location of the user."[6]  As with each previous disputed claim term, Plaintiff asserts that this phrase needs no construction and should be given its plain and ordinary meaning.

To support its proposed construction, Defendant cites several passages in the written description that uses a form of the term "provide" and asserts that, in context, the patentee was using this term to indicate that information is *sent* to the requester.  For example, the specification describes that the "subscribers and parties requesting location and contact information on user are *given* information." '165 Patent col.4, ll.66-67.  In addition, the Abstract of the '165 Patent also explains that as part of this invention, "[t]he application servers *push information* to the device depending on the device location and preferences listed in the home page of the device." '165 Patent, at [57].

In opposition to Defendant's proposed construction, Plaintiff asserts that "[t]here is no language in the claim or the specification that requires that 'providing' be construed to mean 'sending.'" (Opening Claim Construction Br. 14:10-14, ECF No. 52.)  To support this argument, Plaintiff primarily relies on its expert's assertion that "[o]ne of skill in the art would properly understand this claim term to allow the possibility of obtaining the data, not necessarily that the data is 'sent' to possible requesters." (Rosenberg Decl. ¶ 9, ECF No. 54.)

---

[6] The Court first notes that a large amount of this disputed phrase appears in Defendant's proposed construction. In fact, the only difference is Defendant's substitution of the word "sending" in place of "providing." Thus, it appears to the Court that the heart of this dispute centers on the term "providing" and whether "providing" should be construed as "sending."

However, although expert testimony can be helpful, the Federal Circuit has cautioned that "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips*, 415 F.3d at 1318.  For this reason, the Court finds that Plaintiff's expert testimony is insufficient to overcome the definition supported by the words of the written description, as discussed above.  Because Defendant's proposed construction is supported by the words of the specification and Plaintiff has failed to support its position with the intrinsic record, the Court will adopt Defendant's proposed construction.

### 2.    The Court's Construction

For the reasons stated above, after looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "providing the data indicative of the location of the user," as used in the '165 Patent, to mean "sending the data indicative of the location of the user."  The words of the claims and the remaining parts of the specification do not support Plaintiff's position that this phrase needs no construction.  Therefore, the Court construes the term "providing the data indicative of the location of the user" as "sending the data indicative of the location of the user."

## IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that these six (6) claim terms, submitted by the parties, are construed as contained within this Order.  The Court construes these six (6) disputed claim terms in U.S. Patent No. 7,343,165 as follows:

| | |
|---|---|
| "user-specific space in memory" | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
| "accessible over a computer network to a specific user" | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
| "associating a mobile communication device with the user" | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |

| "additional data regarding the user, the additional data being related to the geographic location of the user" | This term requires no construction by the Court, and the terms therein should be given their plain and ordinary meaning. |
| --- | --- |
| "receiving from the user an access list of possible requesters" | "a list of possible requesters authorized to receive the information" |
| "providing the data indicative of the location of the user" | "sending the data indicative of the location of the user" |

**DATED** this 18th day of November, 2013.

_____
Gloria M. Navarro
United States District Judge